Donald C. RUDDY, Appellant,

v.

**LOWER SOUTHAMPTON TOWNSHIP
ZONING HEARING BOARD.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 20, 1995.
Decided Dec. 28, 1995.
Reargument Denied Feb. 6, 1996.

**1052**

Donald C. Ruddy, pro se.

Robert R. Fleck, for appellee.

Before DOYLE and NEWMAN, JJ., and RODGERS, Senior Judge.

RODGERS, Senior Judge.

Donald C. Ruddy (Appellant) appeals from an order of the Court of Common Pleas of Bucks County (trial court) affirming a decision of the Lower Southampton Township Zoning Hearing Board (Board) which denied Appellant's requests for a special exception and variances. We reverse.

In 1992, Appellant and his wife purchased a vacant lot at 2623 Creek Road in Lower Southampton Township (Township) at a tax sale for a price of nine hundred dollars ($900.00). The property has a width of 75 feet and a depth of 120 feet, for a total area of 9000 square feet. The Neshaminy Creek runs behind the property, which is situated entirely in a flood plain. (See attached drawing; Record, Exhibits 1, 9.)

Appellant's predecessor in title purchased the lot directly from the original developer in 1950; at that time the lot fully complied with all applicable zoning regulations. Since the original tract was subdivided, the property has always been singularly and separately owned from any adjacent lot.

Subsequent amendments to the Township's Zoning Ordinance (Ordinance) changed the classification of the property to R–2 Residential and made the property non-conforming.[1] The Ordinance presently requires that a tract in an R–2 district be at least 12,000 square feet in area, have at least 80 linear front feet and have a front yard on each street of not less than 30 feet in depth.

In 1979, the Township amended the Ordinance in response to the state legislature's passage of the Flood Plain Management Act.[2] Section 1903 of the Ordinance now prohibits construction or development within any identified flood plain area in the Township unless a variance is granted.

In order to build on the lot,[3] Appellant requested a special exception under Section 2004 of the Ordinance; this section provides that a building may be erected on a non-conforming lot which has been held in single and separate ownership from the effective date of the Ordinance and which is not of the minimum area or width, provided a special exception is authorized. The building must also conform with the other dimensional requirements of the district unless variances are granted. Accordingly, Appellant also needed to obtain variances from the front setback requirements[4] and from the flood plain restrictions.

On April 7, 1994, Appellant presented his application to the Board, which denied the two variances and the special exception. Appellant appealed to the trial court which,

---

1. The value of a conforming lot in this area is approximately forty thousand dollars ($40,-000.00).

2. Act of October 4, 1978, P.L. 851, *as amended,* 32 P.S. §§ 679.101–679.601.

3. Uses in the R–2 Residence District are limited to: single family dwelling; educational institution; religious or philanthropic use; municipal building and municipal use; camp or private recreational area; club or lodge; railway or bus passenger station; central telephone office; utility substation; and signs, in accordance with applicable sign regulations.

4. Appellant sought relief from the front setback requirement in order to minimize the degree to which the proposed construction would intrude into the floodway.

following *de novo* review,[5] affirmed the Board's denial of the relief requested. The trial court concluded that Appellant is not entitled to a variance on the grounds of economic harm; the court also concluded that Appellant had failed to prove that the grant of the variances would not be detrimental to the public welfare. The trial court denied the special exception because Appellant had failed to obtain the floodplain and front setback variances; the court also stated that the special exception must be denied as not in the public interest.

On appeal to this Court,[6] Appellant argues that the trial court abused its discretion and committed an error of law, in that Appellant established the criteria necessary for the grant of the variances as well as the grant of a special exception.

Generally, a property owner seeking a variance must establish that:

(1) an unnecessary hardship will result if the variance is denied, due to the unique physical circumstances or conditions of the property; (2) because of such physical circumstances or conditions the property cannot be developed in strict conformity with the provisions of the zoning ordinance and a variance is necessary to enable the reasonable use of the property; (3) the hardship is not self-inflicted; (4) granting the variance will not alter the essential character of the neighborhood nor be detrimental to the public welfare; and (5) the variance sought is the minimum variance that will afford relief.

*Township of Harrison v. Smith,* 161 Pa. Cmwlth. 166, 636 A.2d 288, 290 (1993) (quoting *Birmingham Township v. Chadds Ford Tavern,* 132 Pa.Cmwlth. 312, 572 A.2d 855, 858 (1990)).

■ Appellant first argues that, because of the unique physical circumstances or conditions of the property, i.e., its location in the flood plain, the effect of zoning changes is the prohibition of *any* use on Appellant's property, unless a variance from the flood plain restrictions is obtained. Where an applicant establishes that compliance with a zoning ordinance would render the property virtually useless, the applicant demonstrates unnecessary hardship. *Polonsky v. Zoning Hearing Board of Mt. Lebanon,* 139 Pa.Cmwlth. 579, 590 A.2d 1388 (1991). It is clear that under the present zoning regulations no use of the property is permitted without a variance.

■ The trial court first concluded that Appellant was not entitled to the variances based on a theory of economic hardship, because his purchase price was substantially less than the market value of conforming lots; apparently, the court reasoned that the bargain purchase price made the hardship self-inflicted. The trial court relied on *King*

---

5. Neighbors David and Shannon Campbell and Richard and Jill Crosbie and the Neshaminy Woods Community Association (Petitioners) filed a petition to intervene in Appellant's appeal to the trial court. (The Crosbies and David Campbell testified as intervenors at the hearing before the Board.) After Appellant opposed Petitioners' intervention, the deposition of David Campbell was conducted for the limited purpose of showing that Petitioners' interests would not be adequately represented by the Township and, therefore, Petitioners should be permitted to intervene.

Following a conference held pursuant to Bucks County Rule of Civil Procedure *27, Appellant filed a supplemental memorandum of law arguing that the deposition testimony entered into evidence required the trial court to review the case de novo, citing *DeCray v. Zoning Hearing Board of Upper Saucon Township,* 143 Pa. Cmwlth. 469, 599 A.2d 286 (1991) (trial court's receipt of additional evidence relevant to merits of zoning appeal sufficient to require trial court

to make its own findings). In its brief on appeal to the trial court, the Township argued that the testimony was not the type of evidence which would compel the court to decide this matter de novo, citing *Amerikohl Mining Inc. v. Zoning Hearing Board of Wharton Township,* 142 Pa. Cmwlth. 249, 597 A.2d 219 (1991), *petition for allowance of appeal denied,* 529 Pa. 652, 602 A.2d 861 (1992) (additional evidence concerning only the issue of bias did not require the court to make its own findings of fact) and *DeCray.*

In its opinion, the trial court states that the record had been supplemented by Campbell's deposition, implicitly ruling that the testimony was of a nature which required de novo review. This ruling has not been challenged on appeal.

6. Our scope of review where the trial court takes de novo evidence is whether constitutional rights were violated or whether the lower court manifestly abused its discretion or committed an error of law. *McLaughlin v. Centre County Housing Authority,* 151 Pa.Cmwlth. 292, 616 A.2d 1073 (1992).

*v. Zoning Hearing Board of Towamencin Township,* 154 Pa.Cmwlth. 109, 622 A.2d 435 (1993), where we upheld the denial of a variance to a landowner who had purchased a lot at a bargain price with full knowledge that the lot was not of sufficient area to permit development under the present zoning regulations. The *King* court stated that the landowner knew or should have known that the previous owner had not meant the parcel to be held in single and separate ownership, but rather to be merged with one of the conforming lots; accordingly, the landowner had assumed the risk that he may not have been able to develop the property. In *King,* the court concluded that the hardship to the property had been created by the original owner and held that the trial court "correctly placed the landowner in the shoes of the previous owner of the property," *Id.* at 438, who would not have been entitled to a variance.

■ In this case, the trial court's reliance on our decision in *King* is misplaced. First, Appellant has not argued entitlement to relief on economic grounds. Rather, Appellant maintains that the property suffers unnecessary hardship as a result of changes in zoning. Here, Appellant's lot was held in single and separate ownership prior to the adoption of the township's ordinance, whereas in *King* the ordinance was in effect prior to the lot's creation by the developer. Unlike the facts in *King,* the resulting hardship here was not inflicted by the previous owner of Appellant's property. *See Zoning Hearing Board of Bensalem Township v. Grace Building Co.,* 39 Pa.Cmwlth. 552, 395 A.2d 1049 (1979) (holding subsequent purchasers can stand in the shoes of the original owner with respect to a variance, provided that the claimed hardship does not arise out of the purchase). The trial court unduly emphasized the purchase price paid by Appellant; this court has held that a new owner should not be denied a variance solely because he got the property

at a discount and knew of its non-conformity.[7] *King; Grace Building Co.*

■ Appellant testified that he had obtained an engineering study of the property, surveys, designs and calculations, including the design and report of a certified professional engineer. Appellant submitted these documents to the Township along with his application for relief. In a departure from its customary procedure, the Township sent these documents to the Federal Emergency Management Agency (FEMA) for review. FEMA responded by letter informing the Township that it had no objection to the proposed project.[8] Appellant maintains that since 1) FEMA wrote the standards for controlling and avoiding any increase of flooding in the flood plain, 2) FEMA requires participating municipalities to incorporate in exact detail the specified sections of its regulations, and 3) the Township's Ordinance was written to comply with the required sections of FEMA's regulations, FEMA's approval is the best possible evidence on the question of public health, safety and welfare.

Appellant argues that the variance requested was the minimum variance necessary to afford relief. Appellant testified that, while the Ordinance requires a 30–foot front setback, the area of the floodway begins 30 feet from the right-of-way, so that a house could not be built in conformity with the Ordinance and be completely outside the bounds of the floodway; that, although FEMA prefers that nothing be built in the floodway, FEMA had advised Appellant that he could build somewhat into it; and that Appellant looked to a neighboring house which was built 11 feet from the right-of-way and planned his proposed house so that it would not extend further out than the neighboring property and would intrude only 7 feet into the floodway.

The witnesses who testified before the Board in opposition to Appellant's application

7. Where a landowner purchases property with knowledge of the property's condition and zoning classification, such a landowner's hardship is self-inflicted only where he has paid a *high* price for the property because he assumed that a variance which he *anticipated* would justify that price. *Harper v. Ridley Township Zoning Hearing Board,* 21 Pa.Cmwlth. 93, 343 A.2d 381 (1975), citing *Gro Appeal,* 440 Pa. 552, 269 A.2d 876 (1970).

8. All of these documents were entered as evidence at the hearing before the Board.

did not address Appellant's evidence regarding the history of ownership of the property or evidence that unnecessary hardship exists as a result of subsequent zoning changes. Without reference to the letter from FEMA, indicating that it had no objection to the proposed project, the witnesses opined that the proposed project would, in fact, be detrimental to the public welfare, due to existing problems with flooding in the area.

Although it conducted a de novo review, the trial court did not address any evidence offered by Appellant, who bore the burden of proof. Instead, the trial court relied on testimony from Intervenors and Township witnesses to determine that the proposed use is not in the public interest. Upon careful review, we hold that this testimony is insufficient to support the trial court's findings.

The trial court first cited testimony by Howard Gans, the Township's engineer, that construction would interfere with the natural run-off propensities of the property. We note that Mr. Gans was one of several witnesses, including Appellant, who testified regarding problems with a Township drainage pipe, which runs from Creek Road, just nicking the front corner of Appellant's lot, into the Neshaminy Creek. The testimony establishes that the Township's pipe is inadequate to handle the amount of storm water that accumulates in this area and, as a result, storm water backs up onto Appellant's vacant property as well as up along Creek Road.

When asked if the proposed project posed any concern for the Township as to its responsibility for storm water management, Mr. Gans testified that Appellant's property and two vacant adjacent neighboring lots serve as low points of relief for the area, that a dwelling on Appellant's property could be damaged by water overflow, and that, should Appellant be granted relief, Mr. Gans would recommend that the Township purchase an easement from Appellant in order to maintain the drainage pipe.

 Mr. Gans' testimony reflects his belief that, if Appellant's vacant property were no longer available as a point of relief, the Township would need to do more to meet its responsibility to relieve area flooding problems. However, the testimony does not establish that the proposed construction would have a detrimental effect on the public welfare.[9]

The court also relied on Mr. Gans testimony regarding the project's proposed carport and storage space; Mr. Gans opined that the presence of gasoline in a parked car, along with pesticides which he assumed a homeowner would store on the property, would increase the potential for these dangerous products to be disseminated into the water flow during a flood. Mr. Gans stated that these products are not permitted to be stored in the flood areas. However, the Township's flood plain Ordinance (Chapter 27 Section 1903(2)(c)) only prohibits the storage of petroleum products or pesticides *in excess of 550 gallons* in any new or substantially improved structure within the floodplain. Considering the standard set forth in the Ordinance, Mr. Gans' speculative testimony regarding the storage of materials is inadequate to establish a threat to the public health.

The court next cited testimony by Jill Crosbie, a hydrogeologist who had grown up across the street from Appellant's property. Ms. Crosbie described the erosion she had witnessed on property owned by the Neshaminy Woods Neighborhood Association, along the creek itself, since 1964, when a corridor of trees had been removed to allow for the installation of sewer and water facilities. Ms. Crosbie's testimony focused on the drainage ditch area, which encroaches on Appellant's property but actually runs along

---

9. Moreover, the requirement that a variance be consistent with the public interest cannot be used as a substitute for condemnation. It is one thing to say that an applicant must select a use which is consistent with the public interest. It is quite another to say that he must leave his property vacant because the public interest demands that it be so. *See Ryan,* Pennsylvania Zoning Law and Practice, § 6.2.10. In the latter situation, the proper remedy is to condemn the property, and pay for it. *Jacquelin v. Horsham Township,* 10 Pa.Cmwlth. 473, 312 A.2d 124 (1973). The fact that Appellant's vacant property has served as a drainage basin for the area is hardly justification to deny the requested variances. *Iacampo v. Hatfield Township,* 22 Pa.Cmwlth. 206, 347 A.2d 735 (1975).

the property adjacent to his. Ms. Crosbie stated that this drainage area, through which the Township's drainage pipe runs, has suffered substantial erosion over a period of time. She testified that the unattended erosion is undercutting the trees along the water course on this neighboring lot, and that she has made a recommendation that additional trees be planted there.

Ms. Crosbie testified that the primary drainage point of the neighborhood's drainage basin is at the intersection of Creek Road and Arrowhead Drive, the intersection at which Appellant's property and the Township's drainage pipe are located. Ms. Crosbie expressed concern that the proposed construction and the inevitable removal of trees would result in increased erosion; she stated that the effect of removing even one tree was not known.

Ms. Crosbie's statements are evidence that the properties *adjacent to Appellant's* have suffered considerable erosion over the years and that, if there is no mitigation for whatever number of trees are removed due to construction, an unspecified degree of erosion will result. Ms. Crosbie's concerns, as expressed, do not constitute evidence that *the specific project proposed by Appellant* would be detrimental to the public welfare. Ms. Crosbie did not respond when asked directly if the construction would create a threat or nuisance to the public, but allowed another witness to answer.

The court also relied on testimony of Laurel Mueller, a registered, certified soil scientist, that construction would have an effect on soil erosion and drainage of the property. Ms. Mueller testified that the "drainage ditch [located on adjacent properties] is definitely out of control ... and rapidly eroding." (N.T. 47). When asked if the removal of trees and plant life on Appellant's property would have an effect on the disintegration of the drainage area, Ms. Mueller stated that any removal of any vegetation would remove some of the anchoring of that soil. Ms. Mueller did not testify, nor is there other evidence, establishing the amount of trees or vegetation that would be disturbed as a result of the proposed project.

Ms. Mueller also testified regarding additional permits which Appellant would be required to obtain. When asked if she saw any impact on downstream property owners from the proposed construction, Ms. Mueller replied that the permit process would require mitigation of most of the impact on other properties. During Ms. Crosbie's testimony, when Ms. Crosbie was asked whether the grant of Appellant's application would result in increased flood heights or threaten the public expense or welfare, Ms. Mueller responded that the question could only be answered during the review process and during the environmental assessment required for the approval of permits.

We conclude that Ms. Mueller's testimony is insufficient to establish that the grant of Appellant's application would be detrimental to the public welfare.

Finally, the trial court stated that Brian Whitaker, the Township's fire marshall and a resident of Neshaminy Woods, had testified that the proposed construction would potentially present evacuation difficulties for residents and an increased risk to safety personnel. In fact, Mr. Whitaker testified that, over the years, there had been several occasions where his department had to rescue people from houses located on the creek and that this type of rescue endangers other people. These statements had no relevance to the effect of the proposed construction on other properties. Mr. Whitaker opined that an elderly person, a handicapped person, or a child would have difficulty walking through an accumulation of water that could possibly result should the creek come past the proposed dwelling. This testimony is speculative and similarly unrelated to the likelihood of detriment to the public health or safety.

After careful review, we conclude that the evidence clearly establishes that the area in which Appellant's property is located has long experienced flooding problems. The record reflects that five neighboring homes on Creek Road were built entirely within the limits of the floodway, and photographs of properties along Creek Road, taken in 1972 and 1993, show the area submerged in several feet of water. What the evidence does *not* show, however, is that the grant of the relief

requested by Appellant would be detrimental to the public welfare.

Appellant presented uncontradicted evidence that, due to changes in zoning, the variances requested are necessary to enable any reasonable use of the property and are the minimum variances that will afford relief. Appellant established that the hardship to the property is not self-inflicted. Appellant also presented evidence that FEMA had reviewed his plans and had no objection to the project as proposed. Thus, Appellant satisfied his burden of proving that he was entitled to the variances requested. The testimony of the Intervenors and the Township's witnesses as reviewed herein does not constitute substantial evidence that the grant of the variances would be detrimental to the public health, safety or welfare. The trial court erred in relying on this nonspecific and speculative testimony and in concluding that Appellant failed to meet his burden of proof.

 Appellant, entitled to the requested variances, is also entitled to the grant of a special exception under Section 2004 of the Ordinance. The grant of the requested variances satisfies Appellant's burden to meet the objective criteria set forth in the Ordinance for a special exception. *New Bethlehem Borough Council v. McVay*, 78 Pa. Cmwlth. 167, 467 A.2d 395 (1983). A use permitted by special exception is presumptively consistent with the public health, safety and welfare; the denial of a special exception can be based only on proof that the use would create an adverse effect on the public welfare in a way not normally associated with the proposed use. *Kern v. Zoning Hearing Board of Tredyffrin Township*, 68 Pa. Cmwlth. 396, 449 A.2d 781 (1982). Here, the objecting witnesses failed to present proof that the proposed use would present a substantial threat of harm to the health, safety and welfare of the community. *Abbey v. Zoning Hearing Board of the Borough of East Stroudsburg*, 126 Pa.Cmwlth. 235, 559 A.2d 107 (1989).

Accordingly, we reverse the decision of the trial court and we remand the case to the Board with instructions to grant the relief requested by Appellant, subject to any reasonable conditions the Board may deem necessary.

### ORDER

NOW, December 28, 1995, the order of the Court of Common Pleas of Bucks County, at Civil Division, No. 94–04355–13–5, is reversed and the case is remanded to the Lower Southampton Township Zoning Hearing Board to grant the relief requested by Appellant, subject to any reasonable conditions the Board may deem necessary.

Jurisdiction relinquished.