MANAYUNK NEIGHBORHOOD COUNCIL, Friends of Manayunk Canal, Jane Glenn, Kevin Smith, Dolores Lombardi and Darlene Messina,

v.

ZONING BOARD OF ADJUSTMENT OF THE CITY OF PHILADELPHIA and Dranoff Properties, Inc.

Appeal of Dranoff Properties, Inc.

Commonwealth Court of Pennsylvania.

Argued Nov. 6, 2002.
Decided Dec. 23, 2002.
Reargument Denied Feb. 19, 2003.

builder of all would be the owner of a single- family residence.

Peter F. Kelsen, Philadelphia, for appellant.

Cheryl L. Gaston, Philadelphia, for appellee, Zoning Bd. of Adjustment.

Robert J. Sugarman, Philadelphia, for appellees.

Before PELLEGRINI, J., SIMPSON, J., and MIRARCHI, JR., Senior Judge.

OPINION BY Judge SIMPSON.

Dranoff Properties, Inc. (Applicant) appeals the order of the Court of Common Pleas of Philadelphia County (trial court) reversing the order of the Zoning Board of Adjustment of the City of Philadelphia (Board), which granted Applicant's requests for variances to construct a multi-family residential apartment complex. We reverse.

Applicant owns two lots on Venice Island (Subject Property A and B, collectively Subject Properties), a 1.7–mile man-made island located between the Ma-

nayunk Canal and the Schuylkill River. Venice Island lies within the 100–year floodplain of the Schuylkill River. Due to surrounding slopes, Venice Island also lies within the floodway of the Schuylkill River.

Applicant proposes to erect a large residential apartment complex with accessory facilities and parking on the Subject Properties. Currently, Subject Property A is an industrial complex comprised of several structures and Subject Property B is an open, paved parking lot.

Applicant proposes to relocate lot lines on Subject Property A to create one lot from two. Further, Applicant proposes to demolish and remove approximately 60 percent of the structures on Subject Property A, restore the remaining structures, and construct three additions of varying heights. The proposal contemplates 160 apartment units and 160 parking spaces. On Subject Property B, Applicant seeks to relocate lot lines to create one lot from three. Applicant proposes a private parking lot for the apartment complex with an eight foot fence around the parking lot's perimeter.

Because the proposed development is located within the Schuylkill River's floodway, Applicant proposes to: (1) locate all apartment units 14 feet above the 100–year flood level; (2) erect proposed additions on columns constructed to resist lateral forces from flood waters; and (3) have no first floor apartments in any building. Applicant also proposes to erect a pedestrian foot bridge at the second story level of the residential complex. The proposed bridge would connect the apartment complex to the mainland and would only be used to evacuate residents in case of emergency. Applicant proposes to install an emergency alarm and speaker system. In addition, Applicant proposes to enclose a copy of the emergency evacuation plan with each resident's lease.

Applicant applied to the Department of Licenses & Inspections (L&I) for zoning and use permits. L&I denied the applications for failure to comply with G–2 Industrial regulations. Further, L&I noted the issuance of any permits would be contingent upon approval from state and federal agencies. An engineering study would also be required to support Applicant's assertion there would not be a net rise or impact on water levels of the Schuylkill River. Applicant appealed to the Board.

While Applicant's appeal was pending, the Philadelphia City Council enacted legislation (Rezoning Legislation) changing the zoning designations for the Subject Properties from G–2 Industrial to RC–1 Residential. In light of this change, L&I reevaluated Applicant's proposals. Ultimately, L&I concluded Subject Property A did not comply with RC–1 area and parking regulations and, Subject Property B did not comply with use, area and parking regulations. L&I also stated the Philadelphia Planning Commission would have to review Applicant's proposal.

The Board held three hearings at which Applicant presented the testimony of several witnesses. Applicant's architect, Jack Thrower, opined the proposals represent the highest and best use of the Subject Properties and are also in harmony with surrounding areas. Thrower stated that without the extensive reconstruction and renovation proposed by Applicant, the Subject Properties would be valueless.

Applicant also presented testimony by Elmore Boles, a registered professional engineer. Boles opined the proposal would not create a rise in floodwaters and, therefore, Applicant's proposals would comply with federal, state and local regulations governing new construction in floodways. Moreover, the proposal would re-

duce existing obstructions by 30 percent, causing reduced resistance to water flow. Further, Boles stated all proposed units would be a minimum 14 feet above the Schuylkill River's 100–year flood level.

Boles relied on data compiled by Applicant's hydraulic engineer, Dr. John Waggle. Dr. Waggle conducted a hydraulic analysis of the Schuylkill River to determine the impact Applicant's proposal would have on water levels during a 100–year flood. Dr. Waggle utilized data contained in the Unites States Army Corps of Engineers' report, adjusting it for subsequent development along the river. He opined that Applicant's proposal not only complied with federal regulations, but would improve flood conditions by lessening the amount of obstructions in the floodway.

Manayunk Neighborhood Council, Friends of Manayunk Canal and others (Objectors) presented numerous witnesses and experts. Dr. Sarah Willig, a geologist, opined the physical characteristics of Venice Island create a dramatic rise in water levels, similar to the water levels caused by Hurricane Floyd. Dr. Willig further opined Applicant's proposal would be subjected to severe flooding periodically. Therefore, she opposed Applicant's proposal.

Objectors' also submitted reports by Joseph Skupien and Geoffrey Goll, both of whom are hydraulic engineers. They opined that Dr. Waggle's hydraulic analysis satisfied Federal Emergency Management Agency (FEMA) requirements, but it failed to consider the proposal's impact on smaller floods. Significant to the Board, neither of these experts testified the proposal would actually increase water levels during any type of flood.

Objectors also presented testimony by Andreas Heinrich, a traffic engineer. He opined that because the only access to Venice Island is a two lane bridge, the proposal would adversely impact traffic conditions. He also stated Applicant should be required to provide a traffic impact study.

Wendy Lathrop, a consultant on floodplain regulations, testified the best plan for Venice Island is to leave the area undeveloped. In addition, she explained that if a municipality did not comply with federal regulations, it could render itself ineligible for national flood insurance or flood disaster relief funds.

Stephen Miller, a local firefighter, also testified in opposition. He testified that, generally, people are less likely to evacuate from their homes than from their offices. He opined that if the proposal is permitted, someone would drown.

The Board received three letters from FEMA. The first letter indicated that Dr. Waggle's hydraulic report was incomplete because it failed to mention the floodway of the Schuylkill River. In its second letter, FEMA stated the proposed development complied with federal floodway regulations, but stated the letter did not constitute an official approval. The third letter, authored by the Director of FEMA, cautioned that the City of Philadelphia's National Flood Insurance Program could be jeopardized if the proposed development is deemed unsound by federal standards.

Thereafter, the Board granted variances for the Subject Properties subject to an approved hydrologic study prepared by a registered engineer, which satisfies FEMA regulations. Specifically, the Board found an unnecessary hardship would result if a variance from the Code's floodway restrictions was not granted, because the Code prohibits any encroachment or new development in the floodway. The Board further concluded Applicant persuasively es-

tablished the proposal would not adversely affect the public interest. In particular, the Board relied upon the reports and testimony of Applicant's experts as credible and persuasive.

■ Objectors appealed. Without taking additional evidence, the trial court reversed. The trial court determined the Board abused its discretion by finding the proposal would not pose a threat to public safety. The trial court opined there was virtually no evidence to support Applicant's claims it could safely build within the floodway. In addition, the trial court stated Applicant's supporting evidence was faulty. Applicant now .appeals to this Court.[1]

■ A zoning hearing board may grant a variance when the following criteria are met:

(1) an unnecessary hardship will result if the variance is denied, due to the unique physical circumstances or conditions of the property; (2) because of such physical circumstances or conditions the property cannot be developed in strict conformity with the provisions of the zoning ordinance and a variance is necessary to enable the reasonable use of the property; (3) the hardship is not self-inflicted; (4) granting the variance will not alter the essential character of the neighborhood nor be detrimental to the public welfare; and (5) the variance sought is the minimum variance that will afford relief.[2]

*Ruddy v. Lower Southampton Township Zoning Hearing Bd.*, 669 A.2d 1051, 1053 (Pa.Cmwlth.1995), *appeal denied*, 546 Pa. 651, 683 A.2d 887 (1996). A variance applicant must show that unnecessary hardship will result if a variance is denied and that the proposed use will not be contrary to the public interest. *Hertzberg v. Zoning Bd. of Adjustment of the City of Pittsburgh*, 554 Pa. 249, 721 A.2d 43 (1998).

## I.

Applicant asserts that because of the unique physical circumstances of the Subject Properties—the location in the floodway—no development is permitted unless a variance is obtained. We agree.

Section 14–1606 of the Philadelphia Zoning Code (Code) sets forth special restrictions applicable to floodplains and floodways. That section states that no encroachment, including any development or new construction, is permitted within the Schuylkill River's floodway. Section 14–1606(a)(5) of the Code. Because Applicant proposes to construct a residential apartment complex and parking lot, the proposal violates the floodway restriction.

## A.

■ Where an applicant demonstrates that compliance with a zoning ordinance would render the property virtually useless, the applicant demonstrates unnecessary hardship. *Allegheny West Civic*

1. Absent the presentation of additional evidence after the Board's decision, our review is limited to a determination of whether the Board committed an error of law or an abuse of discretion. *Greaton Properties, Inc. v. Lower Merion Township*, 796 A.2d 1038 (Pa. Cmwlth.2002).

2. Although the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101–

11202, is not applicable in Philadelphia, the requirements set forth in Section 910.2(a) of the MPC, added by the Act of December 21, 1988, P.L. 1329, are applicable to variances sought in Philadelphia pursuant to Section 14–1802 of the Philadelphia Zoning Code. *Society Created to Reduce Urban Blight (SCRUB) v. Zoning Bd. of Adjustment of the City of Phila.*, 772 A.2d 1040 (Pa.Cmwlth. 2001).

*Council, Inc. v. Zoning Bd. of Adjustment of the City of Pittsburgh,* 547 Pa. 163, 689 A.2d 225 (1997). Where, as here, zoning regulations prohibit any reasonable use of the property absent variance relief, the requisite hardship is proven. *Ruddy.*

*Ruddy* is instructive. In *Ruddy,* a landowner sought to develop a vacant lot located in a flood plain. The zoning ordinance, however, prohibited any construction or development within the flood plain. Therefore, the landowner applied for a variance. The landowner presented evidence that FEMA reviewed his proposal and had no objection. We held a variance was required to enable the landowner to utilize the property for any reasonable purpose, because no use of the property was permissible.

■ Here, as in *Ruddy,* the Subject Properties are located in a floodway. Like the ordinance in *Ruddy,* the Code prohibits any development within the floodway. As in *Ruddy,* Applicant introduced a letter stating the proposal complies with FEMA regulations. Moreover, the Board imposed a condition that Applicant must submit a hydraulic study prepared by a registered engineer that satisfies FEMA requirements. Requiring compliance with the Code's prohibition on development in the floodway would render the Subject Properties virtually useless. Therefore, the Board correctly concluded Applicant will suffer unnecessary hardship if the variance is denied.

Objectors seek to distinguish *Ruddy* because of the modest development proposed. They argue that *Ruddy* should not be a basis for permitting intense residential use here because permitting a single residence in a floodway is materially different from permitting 160 residences in a floodway. The concept of hardship, however, focuses on the intensity of the restriction rather than the intensity of the proposed use. Where an ordinance restricts virtually all use, hardship is present. The intensity of the proposed use is addressed by other aspects of the variance doctrine, including the limitation that the granted variance is the minimum that will afford relief. Therefore, the hardship holding in *Ruddy* is not limited to the development proposed in that case.

## B.

Objectors also assert that any hardship is self-created. In particular, they contend that the Applicant knew or should have known of the floodway development restrictions when it purchased the property. Objectors rely on mature authority for the statement that "a variance will not be granted to the applicant where he knew of the existing zoning regulations and the problems bringing about the hardship, or should have known of them, at the time he purchased the property." *Ottaviano v. Zoning Bd. of Adjustment of Phila.,* 31 Pa.Cmwlth. 366, 376 A.2d 286, 289 (1977).

■ While older cases explain the "purchaser with knowledge" concept as stated, more recent cases recognize that where hardship arises from intensity of restriction, the right to relief runs with the land. *See N. Pugliese, Inc. v. Palmer Township,* 140 Pa.Cmwlth. 160, 592 A.2d 118, 121 (1991). Unless the hardship arises from the purchase itself, as where the purchase price was too dear, transfer of the property does not create the hardship. *Neilson v. Zoning Hearing Bd. of Municipality of Mt. Lebanon,* 786 A.2d 1049 (Pa.Cmwlth.2001); *see Gro Appeal,* 440 Pa. 552, 269 A.2d 876 (1970); *see generally* 2 Robert S. Ryan, *Pennsylvania Zoning Law and Practice,* §§ 6.2.12–6.2.13 (2001 Supp. at 31–36). Thus, pre-purchase knowledge of zoning restrictions limiting development, without more, does not create a hardship. *Neilson,* 786 A.2d at 1053.

### C.

The Board found the proposals are in harmony with surrounding area. Moreover, the Board found that, because of the changes in zoning, the variance from the floodway restriction is necessary to enable any reasonable use of the Subject Properties and is the minimum variance that will afford relief. These findings are supported by substantial evidence and will not be disturbed on appeal.

### D.

Objectors argue the Board abused its discretion in granting the variances by ignoring overwhelming evidence that Applicant's proposal would be detrimental to the community. Relying extensively on testimony not relied on by the Board, Objectors claim no reasonable fact finder could have found as the Board did because Objectors' witnesses were more persuasive.

 In zoning cases it is well-settled that the Board is the fact finder, with exclusive province over matters of credibility and weight to be afforded the evidence. *In re Realen Valley Forge Greenes Assoc.*, 799 A.2d 938 (Pa.Cmwlth.2002). Moreover, this Court will not engage in fact finding or disturb the Board's credibility determinations on appeal. *In re Brickstone Realty Corp.*, 789 A.2d 333 (Pa. Cmwlth.2001).

 Applicant presented testimony and reports by two engineering experts, Elmore Boles and Dr. John Waggle. Boles, a registered civil engineer, opined the proposal would not create a rise in floodwaters; therefore, Applicant's proposal would comply with all regulations governing new construction in the floodway. Moreover, the proposal would reduce existing obstructions by 30 percent, causing reduced resistance in the flow of the water, resulting in decreased water levels. He further testified that all proposed units would be a minimum 14 feet above the Schuylkill River's 100–year flood level. The Board accepted this testimony as credible and persuasive.

Boles relied on data compiled by Dr. John Waggle, a hydraulic engineer. Dr. Waggle conducted a hydraulic analysis of the Schuylkill River to determine what impact Applicant's proposal would have on water levels during a 100–year flood on Venice Island. To form his opinions, Dr. Waggle utilized data contained in the Unites States Army Corps of Engineers' report and adjusted it for subsequent development along the river. He opined Applicant's proposal not only complied with federal regulations, but would improve flood conditions by removing obstructions from Venice Island. The Board accepted Dr. Waggle's testimony as credible and persuasive.

The Board made findings and cited specific evidence in support of each material finding. The Board concluded that Applicant's proposal would not adversely impact the public health, safety and welfare. R.R. 500a–501a. Because there is sufficient evidence to support this conclusion, the Board did not err on this issue.

 Finally, we note that a municipality has the right to enact zoning ordinances and establish areas within which certain types of buildings may be constructed. *Zarrinnia v. Zoning Hearing Bd. of Abington Township*, 162 Pa. Cmwlth. 690, 639 A.2d 1276 (1994). The power to enact zoning laws is founded on constitutional principles of the police powers of government to promote the public health, morals, safety and general welfare. *Id.* Because local legislative bodies may act as they believe proper, it is outside the province of the judicial branch to compel these bodies to amend, or repeal and reenact, their zoning ordinances. *East Lampeter Township v. County of Lancaster,*

744 A.2d 359 (Pa.Cmwlth.2000). In the exercise of its legislative power, City Council rezoned Venice Island for residential use. Although the wisdom of the rezoning is subject to debate, we may not substitute our conclusions for those of City Council as to whether enactment of the Rezoning Legislation is likely to serve the public health, safety or general welfare. *Id.*[3]

For the foregoing reasons, we reverse the order of the trial court.

### ORDER

AND NOW, this 23rd day of December, 2002, the order of the Court of Common Pleas of Philadelphia County is hereby reversed.

---

**3.** The Board also granted Applicant variances from several use, density and dimensional requirements in the RC–1 zoning district. On appeal to the trial court, however, Objectors challenged only the propriety of the Board's decision to grant the variance from the Code's floodway restrictions. Therefore, any challenge to the Board's decision to grant the remaining variances is waived. *Friendship Preservation Group v. Zoning Bd. of Adjustment of the City of Pittsburgh,* 808 A.2d 327 (Pa.Cmwlth.2002).