Fritz Lee Dickerson IV, Ashton Chase :
Dickerson, Thomas N. Steele, Ann M. :
Korb and Fritz Lee Dickerson III, :
:
Appellants :
:
v. : No. 1544 C.D. 2018
: Argued: September 10, 2019
Lower Swatara Township Zoning :
Hearing Board :
:
v. :
:
Lower Swatara Township :

BEFORE: HONORABLE P. KEVIN BROBSON, Judge
HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                                    FILED: November 13, 2019

Applicants[1] appeal the October 22, 2018 order of the Court of Common Pleas of Dauphin County (trial court), dismissing Applicants' land use appeal and affirming the January 26, 2017 decision and order of the Zoning Hearing Board (ZHB) of Lower Swatara Township (Township), denying Applicants' request for a

---

[1] Applicants are Fritz Lee Dickerson, IV (Dickerson, IV), Ashton Chase Dickerson (Dickerson), Thomas N. Steele (Steele), Ann M. Korb (Korb), and Fritz Lee Dickerson, III (Dickerson, III).

use variance under the Township's Zoning Ordinance (Ordinance).[2]  Applicants contend they met their burden of establishing all of the elements for a variance set forth in Section 910.2(a) of the Pennsylvania Municipalities Planning Code (MPC),[3] and the ZHB's denial of the variance request is not supported by substantial evidence, and is therefore an abuse of discretion.  Upon review, we affirm.

## I.  Background

Applicants are individuals who own or have an ownership interest in the five contiguous residential parcels (Property)[4] at issue in the variance request.  The Property, totaling 17.08 acres, is located in a Residential-Suburban (R-S) district.  The Property is bounded by Pennsylvania Route 283 (Rt. 283) to the north, North Union Street to the west, the Swatara Creek to the east, and residential parcels to the south.

On April 28, 2016, Applicants collectively submitted an application for a land use variance to the ZHB for the Property.  Applicants requested relief from Section 27-502 of the Ordinance,[5] regarding the permitted uses within an R-S

---

[2] The Ordinance was enacted on July 17, 1993.

[3] Act of July 31, 1968, P.L. 805, *as amended,* added by the Act of December 21, 1988, P.L. 1329, 53 P.S. §10910.2(a).

[4] The Property includes: (1) Dickerson Parcel I, owned by Dickerson, IV and Dickerson; (2) Dickerson Parcel II, owned by Dickerson, IV and Dickerson; (3) Steele Parcel, owned by Steele; (4) Korb Parcel, owned by Korb; and (5) Church Parcel, owned by Robert R. Church, Linda E. Church, and Derek S. Nakamura, as co-trustees.  Dickerson, III has the option to purchase a portion of the Church Parcel, which is a section of the Proposed Development.

[5] Section 27-502 states:
> A building may be erected or used and a lot may be used or occupied
> for any of the following purposes:

district, and from Section 27-508 of the Ordinance, imposing a 30% impervious coverage limit for R-S zoned lots. If the variance is granted, Applicants intend to combine the Property's five residential parcels into a single parcel, which they will subdivide and develop as a five-lot commercial property (the Proposed Development). The Proposed Development will consist of one restaurant, one office building, two small retail buildings, and a 79-room hotel. As a self-imposed condition, Applicants agreed that they, or their successor(s) in interest, will expand public water and sewer services to the Proposed Development, thereby bringing the services to the residential area immediately south of the Proposed Development.

---

A. Single family detached dwellings, with the exception of manufactured/mobile home dwellings which are prohibited.

B. Churches or similar places of worship, including associated social facilities.

C. Public recreation areas.

D. Agricultural activities.

E. Municipal buildings and facilities.

F. Public and parochial schools, libraries and museums.

G. Home occupations.

H. Public utility services and facilities.

I. Signs.

J. Accessory uses and buildings incidental to any permitted use.

Reproduced Record (R.R.) at 1a.

The ZHB held four public hearings on Applicants' variance application. Applicants testified and presented four additional witnesses: (1) Robert Shaffer, a professional engineer and a sewage enforcement officer; (2) William Gladstone, a commercial real estate agent; (3) Jarred Neal, a licensed professional traffic engineer; and (4) Thomas Luttrell, a development consultant. The Township presented the testimony of two witnesses: (1) Eric Stump, a licensed professional traffic engineer; and (2) Jamie Keener, a certified land planner. The ZHB granted intervenor party status to 11 neighboring property owners (Intervenors).[6]

The testimony revealed that the Property is currently improved with eight residential dwellings. Several Applicants reside in homes located on the Dickerson I, Dickerson II, and Korb Parcels, which rely on private wells and septic systems. The Steele Parcel, which contains four homes, is not currently used for residential purposes. The Church Parcel is undeveloped.

Steele testified that he purchased the Steele Parcel in 2002 and lived in one of the homes from 2002 to 2007. During that time, Steele rented the other three homes out as residences. However, in 2007, Steele began having septic issues on the parcel. In 2008, Steele built a new private septic system and connected two of the four homes. The size and topography of the lot prevented the connection of the two remaining homes to the new septic system, rendering them unsuitable for human occupancy. Steele, who does not currently reside on the parcel, testified that it would be possible for him to live in one of the two serviced homes. However, he said that all four of the homes have fallen into disrepair. R.R. at 42a-56a.

---

[6] Intervenors are Nancy Avolese; Sherry and Tim Santoro; Deborah Keim-Beynon and Richard Benyon; Joe and Marianne Hoover; David Zavoda; Tom Librandi; and Margaret and Wilfred Anfang.

4

Applicants testified about significant industrial growth in the area north of the Property over the last decade. Many large warehouses have been constructed, including an expansive FedEx facility. The FedEx facility operates 24/7, creating significant noise, light, and dust pollution, as well as increased vehicle and foot traffic in the vicinity. Additionally, directly across North Union Street from the Property, there is a 200-acre parcel of land zoned as "Commercial Highway," known as the Shope Property. The Shope Property has been zoned Commercial Highway since 2008 and remains undeveloped. R.R. at 35a-37a, 39a, 64a, 73a, 82a-83a, 90a-92a.

Applicants who currently reside on the Property testified that they wish to move to a more desirable residential location, and believe that they will be unable to market and sell their properties as residences. However, they have not attempted to place their properties on the market in recent years, and both Dickerson, IV and Dickerson testified that they have not had their homes appraised. R.R. at 32a-33a, 36a, 39a-40a, 65a, 69a, 70a, 75a, 77a.

Shaffer, Applicants' professional engineer, testified that connecting the Property to public water and sewer services would cost between $400,000 and $500,000. These costs would be paid by a developer if the variance was granted, per Applicants' stipulation. Otherwise, the Property will either continue without access, or the costs will be borne by the Township. Shaffer conceded that the Property could be developed residentially without connecting it to public water and sewer services, but added that there would "not [be] a lot of room for density" of development, due to the space required for private septic systems. R.R. at 475a-482a.

5

Gladstone, Applicants' commercial real estate expert, testified that the highest and best use of the Property is a commercial-type use because of the Property's location. R.R. at 526a. However, Gladstone conceded that the Property could be marketed for a permitted use under the current R-S zoning. R.R. at 517a. Similarly, Luttrell, Applicants' development consultant, testified that if each parcel of land in the Property was sold for residential purposes, the prices would not be anywhere close to what the parcel could sell for if it could be developed commercially. R.R. at 840a.

The Township's expert land planner, Keener, testified that the Property was suitable for multiple uses permitted in an R-S district. R.R. at 918a-919a. Keener testified that the Property was also suitable for uses allowed by special exception in an R-S district, such as a medical or dental clinic. R.R. at 919a. Moreover, with respect to intensity, Keener testified that the Ordinance establishes districts allowing uses that are more intense than are allowed in an R-S district, but less intense than allowed in the Commercial Highway district. R.R. at 921a. These districts include Residential-Urban, Residential Multi-Family, and Commercial Neighborhood. *Id.*

Both Applicants' and the Township's professional traffic engineers offered extensive testimony regarding the potential traffic impact of the Proposed Development. Their testimony established that the Proposed Development would result in 3,434 new daily motor vehicle trips on North Union Street. Of these 3,434 additional daily trips, 20% would be heading south of the Proposed Development, towards Intervenors' properties. In the aggregate, the portion of North Union Street south of the Proposed Development would see an 18% increase in traffic volume. R.R. at 544a-605a, 876a-904a.

6

Intervenors objected to Applicants' variance request because they believe the Proposed Development would increase traffic, noise, light, and dust pollution that North Union Street already experiences. Intervenors corroborated Applicants' testimony regarding the negative impacts of the FedEx facility. Hoover testified that the noise and light from the FedEx facility has gotten to a point where it is "not pleasurable." R.R. at 1110a. Librandi testified about the "constant" truck noise coming from the FedEx facility. R.R. at 1135a, 1098a-99a, 1111a-29a, 1134a-49a, 1154a-55a, 1158a-70a.

On January 26, 2017, the ZHB issued a decision and an order denying Applicants' request for a variance with respect to the Property. The ZHB's findings and conclusions include the following:

12. The [] Property is currently improved with eight residential dwellings. All of the dwellings are currently or potentially habitable.

* * *

18. Applicants testified at the hearing that their properties are adversely affected by the noise, light and other factors caused by the proximity to [Rt.] 283 and the industrially developed properties located on the north side of [Rt.] 283.

19. None of the Applicants provided documentation with regards to any septic system or water issues on the [P]roperty subject to this Application.

* * *

24. [] Shaffer testified that the [P]roperty at issue could be developed residentially without public water and public sewer and is already developed residentially.

* * *

7

27. [] Gladstone testified that the "highest and best use" for the [P]roperty would be commercial development, but acknowledged the [P]roperty is currently used for residential purposes.

28. [] Gladstone also acknowledged that the [] Property might be used for some permitted uses in the current R-S District.

* * *

3. The [] Property does not have unique physical circumstances or conditions. The parcel has existed in its present configuration for an extended period of time and borders on a major highway and the Swatara Creek. There are similar residential districts abutting commercial districts in the Township.

4. Not only is there a possibility of using the [P]roperty in conformity with the existing zoning, but the [P]roperty is *currently* being used in conformity with the existing zoning district's requirements.

5. The hardships cited by [Applicants] included traffic, noise and light issues, topography, and soil issues. [Applicants] did not cause the hardships cited and are not responsible for the same, however, [Applicants] are currently using the properties, at least partially, consistent with the existing zoning district.

6. Granting of the variance would [not] significantly alter the essential character of the neighborhood, changing it from residential to commercial.[7]

7. The requested variance does not represent the minimum variance that will afford relief. The [P]roperty could be developed for several permitted uses in the R-S District. In addition, a lesser variance is possible, thus

---

[7] *See* ZHB Opinion at 11 (explaining that granting the variance would not change the character of the neighborhood nor be detrimental to the health, safety, and welfare of the public); *see also* Trial Court 10/22/2018 Opinion at 16-17 (same).

8

making the requested variance one that is beyond the minimum to afford relief. For instance, a residential multi-family use might provide the economic wherewithal to allow the property to be further developed.

8. Not all of the five requirements for granting a variance application were met, therefore the application for variance is denied.

ZHB Opinion, Findings of Fact (F.F.) Nos. 12, 18, 19, 24, 27-28, Conclusions of Law (C.L.) Nos. 3-8 (emphasis in original).

Applicants appealed the ZHB's decision to the trial court, which affirmed. Applicants now appeal to this Court.[8]

## II. Discussion

On appeal, Applicants argue the ZHB's denial of the use variance application is an abuse of discretion because it is not supported by substantial evidence. Specifically, Applicants assert that they have satisfied the variance criteria set forth in the MPC.

To begin, the ZHB abuses its discretion when its findings are not supported by substantial evidence. *Hawk v. City of Pittsburgh Zoning Board of Adjustment*, 38 A.3d 1061, 1065 n.5 (Pa. Cmwlth. 2012). Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* In determining whether substantial evidence exists, the Court is mindful that the credibility of witnesses and the weight to be accorded to their testimony is within the sole province of the ZHB in its capacity as a fact-finder. *Id.* The ZHB is free to accept or reject the testimony of any witnesses, in whole or in

---

[8] Where, as here, the trial court did not take any additional evidence, our review is limited to determining whether the ZHB committed an abuse of discretion or an error of law in rendering its decision. *Marshall v. City of Philadelphia*, 97 A.3d 323, 331 (Pa. 2014).

part. *Id.* This Court may not substitute its interpretation of the evidence in place of the ZHB. *Marshall v. City of Philadelphia*, 97 A.3d 323, 331 (Pa. 2014). If the record contains substantial evidence, this Court is bound by the ZHB's findings resulting from resolutions of credibility and conflicting testimony. *Taliaferro v. Darby Township Zoning Hearing Board*, 873 A.2d 807, 811 (Pa. Cmwlth.), *appeal denied*, 887 A.2d 1243 (Pa. 2005).

> A ZHB may grant a variance when the following criteria are met:
>
> (1) [A]n unnecessary hardship will result if the variance is denied, due to the unique physical circumstances or conditions of the property; (2) because of such physical circumstances or conditions the property cannot be developed in strict conformity with the provisions of the zoning ordinance and a variance is necessary to enable the reasonable use of the property; (3) the hardship is not self-inflicted; (4) granting the variance will not alter the essential character of the neighborhood nor be detrimental to the public welfare; and (5) the variance sought is the minimum variance that will afford relief.

*Ruddy v. Lower Southampton Township Zoning Hearing Board*, 669 A.2d 1051, 1053 (Pa. Cmwlth. 1995).

Applicants allege that they have shown the Ordinance imposes an unnecessary hardship based on the Property's unique physical characteristics, including its proximity to Rt. 283 and the lack of public water and sewage services, which render it unsuitable for any permitted purpose under the current R-S zoning. Applicants also contend they have shown the Property cannot be developed in conformity with the current R-S zoning. Finally, Applicants argue that the variance requested is the minimum necessary to afford Applicants relief.

10

*A. Unnecessary Hardship*

An applicant for a variance must demonstrate that the ordinance from which the applicant seeks relief imposes an unnecessary hardship on the property. *Ruddy*, 669 A.2d at 1053.

> [The Pennsylvania Supreme] Court has previously held that, in the context of use variances, "unnecessary hardship is established by evidence that: (1) the physical features of the property are such that it cannot be used for a permitted purpose; **or** (2) the property can be conformed for a permitted use only at a prohibitive expense; **or** (3) the Property has no value for any purpose permitted by the zoning ordinance."

*Marshall*, 97 A.3d at 329 (quoting *Hertzberg v. Zoning Board of Adjustment of the City of Pittsburgh*, 721 A.2d 43, 47 (Pa. 1998)) (emphasis in original). The Pennsylvania Supreme Court has made clear that "an applicant for a variance is *not required* to show that the property at issue is valueless without the variance or that the property cannot be used for any permitted purpose." *Marshall*, 97 A.3d at 330 (emphasis in original).

However, "mere evidence that the zoned use is less financially rewarding than the proposed use is insufficient to justify a variance." *Marshall*, 97 A.3d at 330 (quoting *Valley View Civic Association v. Zoning Board of Adjustment*, 462 A.2d 637, 640 (Pa. 1983)). Particularly where a variance is sought to change from an existing use consistent with the zoning code to an inconsistent use, the fact that the property would increase in value if a variance was granted is not a sufficient basis for a finding of unnecessary hardship. *Marshall*, 97 A.3d at 330. A variance will not be granted simply because a zoning ordinance deprives the property owner of the most lucrative and profitable uses. *Wilson v. Plumstead Township Zoning Hearing Board*, 936 A.2d 1061, 1070 (Pa. 2007).

11

Here, the ZHB made the necessary findings of fact regarding hardship. The ZHB found that the Property is currently being used for residential purposes. F.F. Nos. 12, 24, 27. The ZHB further found that Applicants failed to prove that the Property's soils are unsuitable for private septic systems. F.F. No. 19. Additionally, the ZHB found Applicants' stipulation that, upon obtaining the variance, either they or their successor(s) in interest will acquire public water and sewer services to the Proposed Development supported the conclusion that the Property could be used for conforming purposes under the current R-S zoning. ZHB Opinion at 9-10. The ZHB stated that "on this record, we cannot conclude that the [] Property possesses unique physical [characteristics] that would support public sewer only in a non-residential building." *Id.* While the ZHB found that Applicants did not cause the traffic, noise, and light pollution testified to, C.L. No. 5, the ZHB found that the Property "has existed in its present configuration for an extended period of time and borders on a major highway and the Swatara Creek. There are similar residential districts abutting commercial districts in the Township." C.L. No. 3.

Upon review, we conclude that the ZHB's findings regarding hardship are supported by Applicants' and their experts' testimony. Several Applicants testified that they are currently residing in homes on the Property. R.R. at 29a, 61a, 74a, 79a. Applicants' experts testified that the Property could be further developed in accordance with the R-S zoning. R.R. at 447a, 517a, 840a. The record lacks evidence on the unsuitability of the Property's soils for private septic systems. Dickerson, III testified that Rt. 283 has bordered the Property to the north since the 1960s. R.R. at 80a. All Applicants acknowledged that the area across Rt. 283 where the FedEx facility is located has been zoned as Industrial since 1970. R.R. at 37a, 50a, 68a, 78a. Lastly, the record shows that there are similar tracts of land zoned for

12

residential use abutting highways and commercial areas throughout Central Pennsylvania. R.R at 510a, 815a-819a. Despite Applicants' extensive presentation of evidence regarding the "highest and best use" of the Property, the fact remains that the Property is currently used and can be further developed in accordance with the current R-S zoning. *See* R.R. at 510a-12a, 517a, 529a, 840a. Therefore, the ZHB's finding that Applicants failed to prove unnecessary hardship is supported by substantial evidence.

### B. Cannot be Developed in Conformity With Ordinance

Next, to obtain a variance, Applicants must demonstrate that the Property cannot be developed in strict conformity with the current R-S zoning. *See Ruddy*, 669 A.2d at 1053. As discussed above, the Property is currently being used for residential purposes in conformity with the R-S zoning. R.R. at 29a, 61a, 74a, 79a. Applicants' experts conceded that the Property could be developed for residential purposes under its current zoning. R.R. at 477a, 517a, 840a. Further, the Township's experts testified that the Property could be developed in conformity with the permitted uses or as a use permitted by special exception in the R-S zoning district. R.R. at 918a-919a, 921a. Therefore, the ZHB's determination that Applicants failed to prove they are unable to develop the Property in conformity with the Ordinance is supported by substantial evidence.

### C. Minimum Variance Necessary

Further, Applicants were required to show that the requested variance was the minimum variance necessary to afford relief. *Ruddy*, 669 A.2d at 1053. The ZHB concluded that "[b]ecause the Property may be used for a number of Permitted

13

Uses without relief from the current R-S zoning . . . the requested relief is in excess of that needed to afford relief." ZHB Opinion at 11. This finding is supported by Applicants' testimony confirming that the Property is currently used for residential purposes, and both Applicants' and the Township's experts' testimony indicating the Property could be developed in conformity with the R-S zoning. R.R. at 29a, 61a, 74a, 477a, 517a, 840a, 918a-919a, 921a. Further, the Township's expert land planner testified that the Property is suitable for uses permitted by special exception in an R-S district, and that there are other uses permitted under the Ordinance that are more intense than are permitted in an R-S district, but less intense than the uses permitted in a Commercial Highway district that Applicants had not considered. R.R. at 919a, 921a. The ZHB's finding that the variance requested is greater than the minimum variance necessary to afford relief is supported by substantial evidence.

### III.   Conclusion

Our review confirms that the ZHB's findings are supported by substantial evidence and support the conclusion that Applicants did not meet the variance criteria. Thus, we conclude that the ZHB did not err or abuse its discretion in denying Applicants' request for a use variance.

Accordingly, we affirm.

_____
MICHAEL H. WOJCIK, Judge

14

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Fritz Lee Dickerson IV, Ashton Chase :
Dickerson, Thomas N. Steele, Ann M. :
Korb and Fritz Lee Dickerson III, :
 :
     Appellants :
 :
   v. : No. 1544 C.D. 2018
 :
Lower Swatara Township Zoning :
Hearing Board :
 :
   v. :
 :
Lower Swatara Township :

# **O R D E R**

AND NOW, this 13th day of November, 2019, the order of the Court of Common Pleas of Dauphin County dated October 22, 2018, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge