IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Appeal of Frank Garcia  :
                                  :   No. 134 C.D. 2020
                                    :
                                    :   Argued: June 10, 2021
Appeal of: Frank Garcia and      :
Kenneth Woods                  :

BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
                  HONORABLE ANNE E. COVEY, Judge
                  HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION
BY JUDGE McCULLOUGH                      FILED: May 10, 2022

Frank Garcia and Kenneth Woods (Appellants) appeal the December 11, 2019 order of the Court of Common Pleas of Philadelphia County (trial court), which affirmed the decision of the Philadelphia Zoning Board of Adjustment (ZBA) to grant a variance for property located at 2600-40 Hagert Street, Philadelphia (Property). The dispute concerned a project proposed by Spanish Capital Investment 5, LLC, and MYL Associates, L.P. (collectively, Applicant), to develop the Property, which had been abandoned for decades, in a manner that would include a multi-family residential use. Because the Property's zoning classification allowed only for single-family residential uses, this proposal required a variance, which the ZBA granted.

## Background

The Property is a rectangular, 45,664.6-square-foot lot located in the Olde Richmond section of Philadelphia. It is bounded by three streets—Almond, Hagert, and Boston. The Property's zoning classification is RSA-5, which allows for single-

family residential use. The Property is abandoned and has been vacant for many years. (Trial Ct. Op. at 1-2; Reproduced Record (R.R.) at 760a-61a.)

Applicant initially filed a zoning/use permit application with the Philadelphia Department of Licenses and Inspections (L&I) in 2018, seeking to create a residential development at the Property. The proposal involved relocating the lot lines on the Property to create three new parcels—Parcels A, B, and C; constructing five, four-story structures for use as 30 residential dwelling units on Parcel A; and constructing 11, four-story structures for use as single-family dwellings on Parcel B. Applicant's proposal required use variances for multi-family household living. On July 31, 2018, L&I issued a Notice of Refusal, which Applicant appealed to the ZBA. On September 13, 2018, and October 18, 2018, Applicant met with the Olde Richmond Civic Association (ORCA) about the project. On September 18, 2018, ORCA submitted a letter of opposition to the project. (Trial Ct. Op. at 2.)

Applicant submitted the project for review by the Civic Design Review (CDR) of the Philadelphia City Planning Commission (PCPC) at PCPC's meetings on October 2, 2018, and November 6, 2018. Following those meetings, PCPC sent a letter to the ZBA stating that it and the CDR supported the project and Applicant's variance requests. However, a Philadelphia City Councilman, Mark Squilla, opposed the project and sent two letters to that effect to the ZBA. *Id.*

Following the refusal from L&I, and in response to Applicant's meetings with ORCA and PCPC, Applicant altered the proposal in an effort to ameliorate some of the concerns that had been expressed by the community. The changes included: (1) a reduction of the building size on Parcel A; (2) a reduction of the total number of residential units by approximately 25%; (3) creation of a pedestrian walkway; (4) an increase in the amount of open area, rear yard depth, and side yard width; and (5) an

2

increase in the landscaping and incorporation of existing trees (Revised Plan). *Id.* at 3. The Revised Plan called for the erection of 10, four-story, two-family structures (duplexes) on Parcel A, and the erection of 11, four-story structures on Parcel B to be used as single-family dwellings. The Revised Plan thus provided for a total of 31 residential units—a decrease of 10 units from the original proposal.

On December 12, 2018, the ZBA held a hearing on the project to consider Applicant's variance requests. Appellants, who are neighbors of the Property, opposed the development. Applicant's project architect, Rustin Ohler, testified about the Property and the surrounding neighborhood. Ohler testified that Parcels A and B totaled over 24,800 square feet. Although the Property is zoned RSA-5 for single-family residences, Ohler noted that the Property is immediately adjacent to the Aramingo commercial corridor, and that it is near other properties that, although technically also zoned RSA-5, contain active commercial or industrial uses. Other neighboring lots, Ohler detailed, contain multi-family residences. With regard to concerns about parking and traffic congestion, Ohler explained that the proposal sought to provide off-street parking, that Applicant was willing to add three more parking spaces if the community agreed to other adjustments to the proposal, and that Applicant was willing to work with city authorities to improve existing traffic conditions. Ohler additionally noted that, if the Property was developed by-right to include only single-family residences, there would be no requirement that Applicant provide any off-street parking at all, which would increase congestion. (ZBA Findings of Fact (FOF) ¶¶10-19; R.R. at 2a-4a.)

Also testifying on behalf of Applicant was a representative of Spanish Capital Investment 5, LLC, Keith Casey. Casey explained that, if Applicant's development proposal was approved, Applicant would use corners of Parcel C to create

a pocket park and community garden and grant either an easement or a lease for the community's use. This arrangement would apply during the duration of a neighboring property's lease of parking spaces on that Parcel, after which time a permanent easement could be granted to the community. (FOF ¶18.)

Multiple area neighbors appeared and testified in opposition to Applicant's proposal, expressing concerns with the size, density, and multi-family use of the Property, as well as traffic congestion and parking problems. Jennifer Bazydlo, Esq., a neighborhood resident and attorney (and counsel for Appellants in this appeal), testified and argued in opposition, contending that Applicant had not demonstrated sufficient hardship to justify a variance, that the Property could be developed in a by-right (single-family) manner, and that the proposal did not represent the minimum modification necessary to accommodate any hardship. Attorney Bazydlo asserted that the proposal was out-of-character with the neighborhood. She further contended that there were unpaid property taxes on the Property, and that under the applicable ordinance, a variance may not be granted until such taxes were paid. (FOF ¶¶26-28.)

ORCA Board Member and Zoning Head Christopher Sawyer represented ORCA at the hearing and voiced community opposition to the project. Sawyer emphasized that he was involved in the PCPC zoning remapping process, and that they had considered the best use for the Property, given that it had sat fallow and vacant since approximately 1980, and determined that zoning RSA-5 for single-family residences was appropriate. Sawyer expressed particular concern with the traffic congestion issues that he expected would follow from Applicant's proposal. On cross-examination, Sawyer acknowledged that there are properties surrounding the Property that are zoned for commercial uses, and he agreed that many of the neighboring properties zoned for single-family use have been legalized or used as multi-family

4

dwellings. Sawyer also acknowledged that PCPC voted in favor of approving Applicant's development proposal and variance requests. (FOF ¶¶29-32.)

In closing, Applicant's counsel, David Orphanides, Esq., emphasized that the project included off-street parking designed to reduce traffic impact, and that Applicant had made revisions in response to community feedback, but nothing was deemed acceptable. Attorney Orphanides noted that the project had been reduced to include only single-family residences and duplexes, and argued that the commercial and industrial uses directly adjacent to the Property would compromise the marketability of single-family residences. Thus, Attorney Orphanides suggested, the variance requested was *de minimis*. Attorney Orphanides argued that complying with the RSA-5 zoning classification presented a hardship because the size and dimensions of the lot would not allow it to be broken up into exclusively single-family residences in a way that would allow for the provision of off-street parking while still making the project economically viable. (FOF ¶¶33-35.)

After the December 12, 2018 hearing, the ZBA delayed its vote pending further negotiations between Applicant and ORCA. Those negotiations failed to yield an acceptable compromise. On February 6, 2019, the ZBA held another hearing and received additional testimony and evidence. At that hearing, Applicant presented evidence regarding its attempt to cooperate with ORCA, and detailed the reduced financial viability of any further departures from the Revised Plan. On March 20, 2019, the ZBA voted unanimously to grant Applicant's requested use variance, allowing multi-family household living on Parcels A and B.

In its conclusions of law, the ZBA related the requirements for approval of a variance under the Philadelphia Zoning Code (Zoning Code or Philadelphia Zoning Code):[1]

> (a) that denial of the variance would result in unnecessary hardship;
> (b) that applicant did not create the unnecessary hardship supporting grant of the variance;
> (c) that the requested variance is the minimum variance necessary to afford relief and the least modification possible of the regulation in issue;
> (d) that grant of the variance will be in harmony with the spirit and purpose of the Zoning Code;
> (e) that grant of the variance will not substantially increase congestion in the public streets, increase the danger of fire or otherwise endanger the public health, safety or general welfare;
> (f) that grant of the variance will not substantially or permanently injure the appropriate use of adjacent conforming property or impair an adequate supply of light and air to adjacent conforming property;
> (g) that grant of the variance will not adversely affect transportation or unduly burden water, sewer, school, park, or other public facilities;
> (h) that grant of the variance will not adversely and substantially affect the implementation of any adopted plan for the area where the property is located; and
> (i) that grant of the variance will not create significant environmental damage or increase the risk of flooding, either during or after construction.

(ZBA Conclusions of Law (COL) ¶4 (citing Philadelphia Zoning Code §14-303(8)(e)(.1)).)

---

[1] Phila., Pa. Zoning Code (2012), available at https://codelibrary.amlegal.com/codes/philadelphia/latest/philadelphia_pa/0-0-0-203439 (last visited May 9, 2022).

6

The determination of "unnecessary hardship," moreover, requires all of the following findings:

> (a) that there are unique physical circumstances or conditions . . . peculiar to the property, and that the unnecessary hardship is due to such conditions . . . .
> (b) that because of those physical circumstances or conditions, there is no possibility that the property can be used in strict conformity with . . . this [Z]oning [C]ode, and that authorization of a variance is therefore necessary to enable the viable economic use of the property;
> (c) that the use variance, if granted, will not alter the essential character of the neighborhood . . . nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare; and
> (d) that the hardship cannot be cured by the grant of a dimensional variance.

(COL ¶5 (citing Philadelphia Zoning Code §14-303(8)(e)(.2)).)[2]

With regard to hardship, the ZBA concluded that the "Property is a large consolidated lot with three street frontages, surrounded almost exclusively by commercial and industrial uses." (COL ¶10.) The Property, the ZBA noted, "has remained vacant and blighted the neighborhood for decades, but Applicant now seeks to develop it as a mix of single-family homes and duplex condominiums." *Id.* Finding that the size and dimensions of the Property established a sufficient hardship, the ZBA also concluded that this hardship was not self-imposed, that the requested variances were the minimum necessary to afford relief, and that the development would not be detrimental to public health, safety, or welfare. (COL ¶12.) With regard to the

---

[2] These requirements for the establishment of entitlement to a variance and for the determination of unnecessary hardship echo those set forth in the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101-11202. *See* section 910.2(a) of the MPC, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10910.2(a).

minimum-necessary criterion, the ZBA noted that roughly half of the project would be single-family dwellings as permitted in the RSA-5 zoning district, and that Applicant had revised the plans multiple times to comply with all applicable dimensional requirements and to reduce the number, density, and type of units as part of the PCPC review process, resulting in PCPC's support for the project. (COL ¶13.) In that vein, the ZBA noted that Applicant had undertaken extensive good faith efforts to engage with the community to resolve concerns with the proposal, despite ORCA's continued opposition. (COL ¶14.) The ZBA finally concluded that the project was consistent with the Philadelphia Zoning Code's purpose and would not adversely impact public health, safety, or welfare, "including considerations of traffic, light and air, public facilities, or the environment." (COL ¶15.) Accordingly, the ZBA determined that the requested variances were properly granted.

On April 1, 2019, Appellants filed an appeal of the ZBA's Notice of Decision to the trial court. The trial court recognized that its review was limited to a determination of whether constitutional rights had been violated, an error of law had been committed, or findings of fact necessary to support the adjudication were not supported by substantial evidence. (Trial Ct. Op. at 5 (citing 2 Pa.C.S. §754(b); *Lewis v. Civil Service Commission*, 542 A.2d 519, 522 (Pa. 1988)).) Substantial evidence, the trial court correctly noted, is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* (citing *Valley View Civic Association v. Zoning Board of Adjustment*, 462 A.2d 637, 640 (Pa. 1983)). In reviewing the ZBA's determination, the trial court related, a court must not substitute its judgment for that of the ZBA, and it may reverse only if the ZBA's findings are totally without support in the record. *Id.* (citing *Marshall v. City of Philadelphia*, 97 A.3d 323, 331 (Pa. 2014); *Republic Steel Corporation v. Workmen's Compensation Appeal Board*, 421 A.2d 1060

8

(Pa. 1980)). The ZBA is the sole judge of the credibility of witnesses and the weight afforded to evidence, and, assuming the existence of substantial evidence, a reviewing court is bound by the ZBA's findings that result from resolutions of credibility and conflicting testimony. *Id.* (citing *Macioce v. Zoning Hearing Board of the Borough of Baldwin*, 850 A.2d 882 (Pa. Cmwlth. 2004); *Manayunk Neighborhood Council v. Zoning Board of Adjustment of the City of Philadelphia*, 815 A.2d 652 (Pa. Cmwlth. 2002)).

Although the trial court, like the ZBA, listed the criteria for a variance within the Philadelphia Zoning Code, it noted that our Supreme Court has, in its words, "boiled down" the criteria into three requirements: "(1) unique hardship to the property; (2) no adverse effect on the public health, safety or general welfare; and (3) . . . the minimum variance that will afford relief at the least modification possible." *Id.* at 8 (quoting *East Torresdale Civic Association v. Zoning Board of Adjustment of Philadelphia County*, 639 A.2d 446, 447 (Pa. 1994)). After review of the record and the parties' briefs and oral argument, the trial court concluded that the ZBA did not err in determining that the Property possessed a unique hardship; that the hardship was not self-created; that the variance would not adversely affect public health, safety, or welfare; and that the variances were the minimum necessary to afford relief.

Unnecessary hardship, the trial court noted, may be created by "unique physical circumstances or conditions (such as irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions) peculiar to the property." *Id.* at 9 (quoting Philadelphia Zoning Code §14-303(e)(.2)(.a)). Moreover, the Supreme Court has made clear that, "[i]n establishing hardship, an applicant for a variance is not required to show that the property at issue is valueless

9

without the variance or that the property cannot be used for any permitted purpose." *Id.* (quoting *Marshall*, 97 A.3d at 395).

The trial court agreed with the ZBA that "the physical shape, size and character of the . . . Property qualifies as a unique hardship" under both [s]ection 14-303 of the Philadelphia Zoning Code and governing precedent. *Id.* The Property "is a 45,664.6[-]square[-]foot vacant lot, with three (3) separate street frontages, in a neighborhood that has a zoning classification that allows for single-family residential use (RSA-5)." *Id.* at 10. The trial court reasoned that the "fact that the property has sat unused and vacant for decades would seem to indicate that the [P]roperty possesses a unique hardship that forestalls proper development." *Id.* Evidence of the hardship in developing the Property with single-family residences only, the court observed, was presented in the form of testimony from Applicant's architect, Rustin Ohler. Due to the unique size and street frontage, Ohler testified, a by-right option would result in 16 single-family homes each 70 feet deep. *Id.* (citing December 12, 2018[3] Hearing Transcript (12/12/2018 Hr'g Tr.) at 23). Moreover, Applicant provided uncontroverted evidence that the Property "sits in an area that is a mix of industrial, commercial, multi-family and single-family uses." *Id.* (citing 12/12/2018 Hr'g Tr. at 31). Finally, the trial court reiterated the ZBA's observation that the Property had been vacant and blighted the neighborhood for decades. *Id.* The trial court thus found adequate support in the record for the ZBA's determination that the Property suffered from a unique hardship in the RSA-5 district due to its "unique size, shape, configuration and surroundings." *Id.* at 11. The hardship, moreover, was not self-created, because these features existed at the time that Applicant purchased the Property.

_____

[3] For the referenced portion of Ohler's testimony, the trial court incorrectly cited the transcript from the February 6, 2019 hearing. The cited testimony appears in the transcript from the December 12, 2018 hearing.

10

The trial court further found sufficient support for the ZBA's determination that the variances granted were the minimum necessary to afford relief to Applicant. The evidence of record demonstrated that the Revised Plan reflected a substantial reduction in scope from the original proposal, reducing the proposed development to half single-family residences and half duplexes. *Id.* at 12. Applicant, further, revised the plans multiple times to comply with all applicable dimensional requirements and to reduce the number and type of units, which allowed it to gain the support of PCPC. *Id.*

Finally, the trial court found no error in the ZBA's determination that the variances would not detrimentally impact public health, safety, or welfare. Applicant presented ample evidence to that effect, and "worked extensively with community groups, even cutting into the financial lucrativeness of the venture, so as to ensure that the [project] would not negatively impact the surrounding community." *Id.* In support, the trial court cited Applicant's modification of the plans to accommodate parking concerns, its commission of a traffic study and pledge to improve existing traffic conditions, and its reduction of the building size on Parcel A and reduction of the total residential units by 25%. *Id*. at 12-13. Moreover, the trial court opined that the project was more contextually appropriate for the neighborhood than the existing auto repair and warehouse uses that were adjacent to it. As the sole arbiter of credibility, the trial court reasoned, it was within the ZBA's authority to conclude that Applicant's "good[-]faith negotiations, [and] expert traffic, and expert safety analysis constituted substantial evidence that the [project] will not endanger the public health, safety, or general welfare." *Id.* at 13.

Thus, the trial court found that the ZBA's decision to grant the requested variance was supported by substantial evidence. The trial court did not address

11

Appellants' argument concerning unpaid property taxes, which Appellants raised in their Pa.R.A.P. 1925(b) statement, and have pursued on appeal to this Court.

Appellants present three issues to this Court.[4] They contend (1) that Applicant failed to present substantial evidence of hardship; (2) that the proposed variance was not the minimum variance necessary to afford relief; and (3) that the variance should not have been granted because over $50,000 in property taxes were due on the Property.

### Arguments

Appellants principally take issue with the ZBA's assessment of hardship—that the Property is "a large consolidate[d] lot with three street frontages, surrounded almost exclusively by commercial and industrial uses" and that the Property "has remained vacant and blighted the neighborhood for decades, but Applicant now seeks to develop it as a mix of single-family and duplex condominiums." (Appellants' Br. at 13 (quoting COL ¶10).) Appellants assert that the evidence showed that over 16 residential units are adjacent to the Property, so it is not "surrounded almost exclusively" by commercial and industrial uses. *Id.*

---

[4] Under our standard of review:

[W]hen, as here, the trial court did not take any additional evidence, an appellate court is limited to determining whether the zoning board committed an abuse of discretion or an error of law in rendering its decision. *Township of Exeter v. Zoning Hearing Board*, 962 A.2d 653, 659 (Pa. 2009); *Noah's Ark Christian Child Care Center, Inc. v. Zoning Hearing Board of West Mifflin*, 880 A.2d 596, 596 (Pa. 2005), *per curiam* (citing *Valley View*, 462 A.2d at 639). We may conclude that the zoning board abused its discretion only if its findings are not supported by substantial evidence, which we have defined as "relevant evidence which a reasonable mind would accept as adequate to support the conclusion reached." *Exeter*, 962 A.2d at 659; *see also Valley View*, 462 A.2d at 640, 642 (same). An appellate court errs when it substitutes its judgment on the merits for that of a zoning board. *East Torresdale*, 639 A.2d at 448.

*Marshall*, 97 A.3d at 331 (citations modified).

Appellants quote the Philadelphia Zoning Code's requirement that hardship be established by a finding that there is "no possibility that the property can be used in strict conformity with the provisions of this Zoning Code and that the authorization of a variance is therefore necessary to enable the viable economic use of the property." *Id.* at 14 (quoting Philadelphia Zoning Code §14-303(8)(e)(.2)(.b)). Appellants assert that Applicant failed to present evidence demonstrating that compliance with the RSA-5 zoning designation was impossible. Appellants acknowledge that the Property is located near commercial corridors and industrial uses, but they maintain that this does not justify the finding that building only single-family homes would present a hardship. Appellants contend that Applicant offered no substantial evidence regarding the marketability of single-family homes that would face the nearby commercial and industrial buildings, aside from the statements of Applicant's counsel. Although Applicant asserted that an exclusively single-family development would present a financial hardship, Appellants argue that Applicant failed to provide a financial evaluation to that effect, and that Applicant did not consider the financial viability of obtaining dimensional variances to build smaller single-family homes, rather than duplexes.

Appellants further note that the hardship requirements demand a showing that the variance will "not alter the essential character of the neighborhood . . . nor be detrimental to public welfare." *Id.* at 16 (quoting Philadelphia Zoning Code §14-303(8)(e)(.2)(.c)). Appellants argue that the project will negatively impact public safety because it includes a driveway for off-street parking accessible from Almond Street, which is a narrow, two-way street with no traffic controls and fast-moving traffic. Appellants acknowledge that Applicant commissioned a traffic study that found that no problems were likely, but Appellants note that the traffic study did not

13

consider pedestrian safety. Moreover, Appellants argue, the project would be detrimental to the single-family character of the neighborhood, because nowhere else in the neighborhood is there a block of duplex-style residences. *Id.* at 17.

With regard to their second issue on appeal, Appellants argue that the ZBA erred in concluding that the requested variance did not reflect the minimum necessary variance to afford Applicant relief. Appellants note that the Philadelphia Zoning Code contains an exception to the minimum lot size requirement that would allow Applicant to divide the Property into 31 single-family parcels. *Id.* at 18. Thus, Appellants argue, the minimum variance necessary to afford relief to Applicant was dimensional—building smaller single-family residences than otherwise would be permissible. This would allow Applicant to build the same number of units as Applicant's proposal, but without including any duplexes.

Finally, Appellants contend that the Philadelphia Zoning Code did not permit the ZBA to grant a variance to Applicant in light of the substantial amount of unpaid property taxes due on the Property. Appellants rely upon Philadelphia Zoning Code §14-303(15)(a)(.9), which states: "No special exception or variance shall be granted unless the person who owns the property for which the application is made has provided documentation satisfactory to the [ZBA] verifying that all of the person's taxes due on the subject property . . . are current or are subject to a payment agreement." (Appellants' Br. at 19.) Appellants acknowledge the relevant exception from that requirement:

> If the applicant attaches a purchase and sale agreement providing that the sale of the subject property . . . is contingent upon approval of the application . . . the [ZBA] may conditionally approve the application if it otherwise meets the criteria for approval, with a condition that the special exception or variance will be finally approved when L&I is provided with a copy of the [ZBA's] decision and

14

> documentation verifying that all the taxes due on the subject
> property are paid in full.

*Id.* (quoting Philadelphia Zoning Code §14-303(15)(a)(.9)(.d)). Appellants emphasize that the ZBA may grant a conditional approval in such circumstances. Contrary to this provision, Appellants assert, the ZBA granted Applicant an unconditional approval despite the unpaid taxes on the Property. In any event, Appellants assert that Applicant failed to provide the ZBA with the correct documentation to show that it obtained the necessary tax clearances.

Applicant contends that there was no error in the ZBA's decision, or in the trial court's affirmance of it. As to Appellants' challenge to the finding of hardship, Applicant asserts that Appellants merely dispute the ZBA's credibility determinations—a matter over which the ZBA is the sole judge. (Applicant's Br. at 17.) That is, Applicant asserts that it presented ample evidence of the hardship faced by the Property, and the ZBA credited that evidence. The hardship, Applicant argues, is derived from the Property's unique size, shape, and character. *Id.* at 18. Applicant contends that the Property is extremely large for a single-family zoned lot. The fact that it has three street frontages, as well, poses unique difficulties. Applicant notes that evidence of the hardship was presented in the form of Ohler's testimony, explaining that a by-right option would result in 16 single-family homes each 70 feet deep and over 20 feet wide, with a large amount of open space that would be out of context with the surrounding area, where residences are less than 20 feet wide and have an average of 25% open area. *Id.* at 19 (citing 12/12/2018 Hr'g Tr. at 23). Thus, Applicant contends, the size of the lot creates a unique situation where a subdivision into single-family homes would be extremely challenging. The fact that the Property has been vacant and blighted for decades, in Applicant's view, provides additional evidence that it is not developable under its existing zoning designation. *Id.* at 19-20.

15

Further, Applicant notes that under *Valley View*, 462 A.2d at 640, the use of adjacent and surrounding land is relevant to the determination of hardship. (Applicant's Br. at 20.)   Here, Ohler's testimony established that the Property is immediately adjacent to a gym, which is on the Aramingo commercial corridor, that the Property is immediately adjacent to industrial uses on the Boston Street side, multi-family and commercial/light industrial uses on the Hagert Street side, and industrial and commercial buildings catty-corner from the Property. *Id.* (citing 12/12/2018 Hr'g Tr. at 9).   An auto repair and body shop is nearby on Hagert Street, and many of the properties zoned for single-family residences are in fact used as multi-family residences. *Id.* at 21 (citing 12/12/2018 Hr'g Tr. at 11; ZBA FOF ¶31).   Contrary to Appellants' suggestion, then, Applicant asserts that the surrounding area amply supports a project that includes multi-family residences.   Stressing the substantial evidence standard, Applicant asserts that the ZBA's finding of hardship was supported by testimony from architects, the representative of the developer, and a real estate appraiser, as well as evidence in the form of site plans, photos, and financial analysis. The ZBA found Applicant's evidence credible, and Applicant argues that this determination should not be disturbed on appeal.

With regard to the minimum-necessary requirement, Applicant stresses the ZBA's conclusions of law recognizing that Applicant had revised the plans to comply with all applicable dimensional requirements, to reduce the number of units such that half of the project consisted of single-family residences, and that Applicant had made good faith efforts to engage with the community about the project. *Id.* at 24-25 (citing COL ¶¶13-14).   These efforts, Applicant notes, were amply documented in the record.   The evidence also established, through Keith Casey's testimony, that any further reduction in the number of units would make the project financially unviable.

16

Specifically, Casey testified that Applicant's proposal could be expected to result in a return on investment of approximately 3.1%, and any unit count below 31 would result in a loss. *Id.* at 26 (citing 2/6/2019 Hr'g Tr.; R.R. at 672a). This, in Applicant's view, demonstrates that not only did the Property present a hardship, but the variance allowing Applicant to build a certain number of residences as duplexes was the minimum variance necessary to afford relief from that hardship. Moreover, Applicant stresses that off-street parking is not required in the RSA-5 district, so if it was to build only single-family homes as Appellants suggest, it could do so without providing any parking spaces—magnifying the community's parking concerns. *Id.* at 27-28. Thus, Applicant's proposal, although necessitating a use variance, was even less disruptive than Appellants' alternative suggestion.

Applicant further contends that its proposal presented no concerns with public health, safety, and welfare. Applicant again emphasizes the other uses in the neighborhood, including auto repair and warehouse space, and contends that its proposal was more contextually appropriate than those uses. *Id.* at 28. The community had a specific concern with parking and traffic, and Applicant contends that it amply addressed these issues. Applicant again stresses that single-family residences are not required to have off-street parking at all, but Applicant sought to provide off-street parking for nearly all of the proposed units. *Id.* Applicant also presented a traffic study from Dynamic Traffic, which concluded that adding a driveway for the development on Almond Street would provide safe and efficient access to the roadway system. *Id.* at 29. Applicant notes that Appellants provided no evidence to the contrary. The ZBA, Applicant stresses, was entitled to credit its evidence regarding public health, safety, and welfare, including "considerations of traffic, light and air, public facilities, or the environment." *Id.* at 30 (quoting COL ¶15).

17

Finally, Applicant contends that any unpaid property taxes posed no obstacle to its ability to obtain a variance. With regard to the Philadelphia Zoning Code's property tax requirement, and the exception thereto, Applicant acknowledges that the exception allows that the ZBA "may conditionally approve the application if it otherwise meets the criteria for approval." *Id.* at 31-32. Applicant argues that this does not indicate that the ZBA *must* include a conditional proviso to any approval. *Id.* at 32. Instead, Applicant suggests, "the attachment of a conditional approval is only applicable where the ZBA believes it is appropriate." *Id.* Here, the ZBA declined to make its approval conditional. Applicant pledges that any taxes will be paid before closing.

## Discussion

### A. Unnecessary Hardship

As noted above, the Philadelphia Zoning Code provides that unnecessary hardship in the case of a use variance requires the following findings:

> (.a) That there are unique physical circumstances or conditions (such as irregularity, narrowness, or shallowness of the lot size or shape, or exceptional topographical or other physical conditions) peculiar to the property, and that the unnecessary hardship is due to such conditions . . . ;
> (.b) That because of those physical circumstances or conditions, there is no possibility that the property can be used in strict conformity with the provisions of this Zoning Code and that the authorization of a variance is therefore necessary to enable the viable economic use of the property;
> (.c) That the use variance . . . will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare; and
> (.d) That the hardship cannot be cured by the grant of a dimensional variance.

18

Philadelphia Zoning Code §14-303(8)(e)(.2)(.a)-(.d).

Our Supreme Court has summarized that, in the context of use variances, "unnecessary hardship is established by evidence that: (1) the physical features of the property are such that it cannot be used for a permitted purpose; **or** (2) the property can be conformed for a permitted use only at a prohibitive expense; **or** (3) the property has no value for any purpose permitted by the zoning ordinance." *Marshall*, 97 A.3d at 329 (emphasis in original) (quoting *Hertzberg v. Zoning Board of Adjustment of the City of Pittsburgh*, 721 A.2d 43, 47 (Pa. 1998)). However, the Supreme Court has "repeatedly made clear that in establishing hardship, an applicant for a variance is *not required* to show that the property at issue is valueless without the variance or that the property cannot be used for any permitted purpose." *Id.* at 330 (emphasis in original). Indeed, the Supreme Court has repeatedly reversed decisions of this Court for requiring a showing of impossibility of compliance or valuelessness to demonstrate hardship. *Id.* (citing, *inter alia*, *Hertzberg*; *Valley View*). A showing of valuelessness, for instance, "is but one way to reach a finding of unnecessary hardship; it is not the only factor nor the conclusive factor in resolving a variance request." *Id.* (quoting *Hertzberg*, 721 A.2d at 48). Rather, "multiple factors are to be taken into account" in assessing the presence of unnecessary hardship. *Id.*

On the other hand, although valuelessness is not a required showing, "[m]ere economic hardship will not of itself justify a grant of a variance." *Id.* (quoting *Wilson v. Plumstead Township Zoning Hearing Board*, 936 A.2d 1061, 1069 (Pa. 2007)). "[E]conomic factors are relevant," the Supreme Court has held, "albeit not determinative, in a variance assessment." *Id.* at 331. Moreover, as Applicant emphasizes, the Supreme Court has stated that, "[i]n evaluating hardship the use of

19

adjacent and surrounding land is unquestionably relevant." *Valley View*, 462 A.2d at 640.

Applicant presented evidence that satisfies the criteria for a finding of unnecessary hardship. In assessing that evidence, we must bear in mind that our review is limited to a determination of whether Applicant provided substantial evidence—relevant evidence which a reasonable mind would accept as adequate to support the conclusion reached—and that the ZBA was the sole judge of the credibility of that evidence and the weight to be afforded thereto.

With regard to the "unique physical circumstances or conditions . . . peculiar to the property," Philadelphia Zoning Code §14-303(8)(e)(.2)(.a), Applicant presented the testimony of its architect, Rustin Ohler:

> Q: And with the – given the dimensions of the lot, is it not correct that we would basically – you would have two options if you were to create a by[-]right plan with no parking and that would be to either subdivide the lot basically down the middle from Almond Street away and have lots facing on Hagert and lots facing on Boston. They would be approximately, what, 70-something feet deep?
> A: Correct.
> Q: And they would then be approximately 20 feet wide?
> A: Correct.
> Q: And how many of those would we have? How many of those parcels would we have?
> A: I don't know.
> Q: If I told you it was 16, would that sound reasonable?
> A: From memory, I thought it was 17.
> Q: And that would be what the minimum lot size requirement? 1,440?
> A: Of 1,140, yes.
> Q: The other option would obviously be single lots that would run street to street, but they would be very large lots. They would have a minimum lot width of 16 feet, is that correct?
> A: Correct.

20

(12/12/2018 Hr'g Tr. at 22-23; R.R. at 31a-32a.) In his closing argument, Attorney Orphanides explained that these dimensional issues created an unnecessary hardship:

> The lot, it may be square or a rectangle but it's an odd size in its dimensions. It's too long to run a lot street to street. And then if you cut it in half down the middle, then you end up with very wide lots, 20 feet – it's 140-something feet from Almond to Boston. So you end up with 70-something feet by 20-something feet, very odd shaped lots compared to everything around it. If you look at the zoning maps which have the parcel map overlaid on it, it becomes a very odd animal for that area if we're going to do it buy [sic] right.

(2/6/2019 Hr'g Tr.;[5] R.R. at 705a-06a.)

Applicant thus provided testimony via Ohler from which the ZBA could conclude that "the size of [the lot] and the dimensions of it do not allow it to be broken up necessarily in a way that would promote also providing off street parking and still making it viable." (FOF ¶35 (quoting 12/12/2018 Hr'g Tr. at 128); *see also* COL ¶10 (finding sufficient hardship because "[t]he Property is a large consolidated lot with three street frontages"); Trial Ct. Op. at 9 (agreeing that "the physical shape, size and character of the . . . Property qualifies as a unique hardship").) Moreover, to the extent that the size and dimensions of the lot gave rise to an unnecessary hardship, the hardship was not self-created, because those features existed prior to Applicant's plan to acquire and develop the Property.

Applicant, moreover, presented ample, uncontradicted evidence concerning the use of adjacent and surrounding properties, which included commercial, industrial, single-family residential, and multi-family residential uses. (12/12/2018 Hr'g Tr. at 8-12, 32-34; R.R. at 17a-21a, 41a-43a.) Such evidence of "adjacent and

_____

[5] The transcript of the February 6, 2019 hearing is unpaginated.

21

surrounding land is unquestionably relevant" to a determination of hardship, *Valley View*, 462 A.2d at 640, and it is evidence from which the ZBA reasonably could conclude that Applicant's proposed project would "not alter the essential character of the neighborhood or district in which the property is located." Philadelphia Zoning Code §14-303(8)(e)(.2)(.c). Applicant presented evidence, through Casey's testimony, that it already had substantially reduced the size and scope of the proposed project, to the point where it expected a return on investment of approximately 3.1%, and that further reduction would make the project economically unviable. (2/6/2019 Hr'g Tr.; R.R. at 668a-73a.) Such "economic factors are relevant, albeit not determinative" of hardship, *Marshall*, 97 A.3d at 331, and this served as evidence from which the ZBA could conclude that the Property could not "be used in strict conformity with the provisions of this Zoning Code and that the authorization of a variance is therefore necessary *to enable the viable economic use* of the property." Philadelphia Zoning Code § 14-303(8)(e)(.2)(.b) (emphasis added). Applicant's reduction of the size and scope of the project also allowed it to avoid any violation of dimensional requirements, and, thus, "the hardship [could not] be cured by the grant of a dimensional variance." *Id.* §14-303(8)(e)(.2)(.d).

Applicant accordingly presented evidence that a reasonable mind could accept as adequate to support the conclusion—substantial evidence—that strict compliance with the Property's RSA-5 zoning designation presented an unnecessary hardship for purposes of the Philadelphia Zoning Code. The ZBA clearly credited Applicant's evidence, as was its prerogative, and Appellants have presented no basis upon which to disturb the ZBA's fact-finding and credibility determinations. Although it is something of a lesser focus of Appellants' argument, the same goes for the ZBA's determinations that the project would not be detrimental to the public welfare.

22

Appellants primarily express concern with traffic, however, the ZBA was entitled to credit Applicant's Traffic Assessment Report which indicated no safety problems, as well as Ohler's testimony that the project "opened ingress and egress and visibility at the Property driveway, allowing adequate space for the current traffic patterns nearby." (FOF ¶20.) It is worth noting, moreover, that Appellants now suggest that Applicant could have proposed the erection of 31 small single-family residences on the Property, which would not allow for any off-street parking—a proposal that, common sense dictates, would seem likely to *increase* Appellants' concern with traffic and congestion.

In sum, given the ample evidence presented, we find no error or abuse of discretion in the ZBA's finding of unnecessary hardship, nor in the trial court's affirmance thereof.

## B. Minimum Necessary Variance

Many of the same factors discussed above also demonstrate that there was substantial evidence supporting the ZBA's determination that the variance requested was the minimum necessary to afford relief. The ZBA made several conclusions of law concerning this factor—that "roughly half of the project will be single-family dwelling use as permitted in the RSA-5 zoning district, that Applicant revised plans multiple times to comply with all applicable dimensional requirement[s] and to reduce density in number and type of units," and that Applicant "undertook extensive and lengthy project planning and good faith community engagement efforts to resolve neighbors' current and future concerns with the proposal, despite ORCA's ultimate opposition." (COL ¶¶13-14.)

This Court has recently discussed the application of the minimum-necessary requirement as it concerns use variances. *See In re Ridge Park Civic Association*, 240 A.3d 1029, 1033-38 (Pa. Cmwlth. 2020). This minimum-necessary

requirement "applies to use variances despite the fact that, generally, 'a use variance marks a qualitative rather than a quantitative departure from an existing ordinance' and 'a minimum variance is [more] difficult to assess in use variance cases [than in] dimensional variance cases[.]'" *Id.* at 1033 (quoting *Paganico v. Zoning Hearing Board of the Municipality of Penn Hills*, 227 A.3d 949, 954-55 (Pa. Cmwlth. 2020)). That is, the "minimum variance criterion is more readily and practically applicable to quantifiable restrictions, such as dimensional requirements (*i.e.*, distance or size), rather than those that are not quantifiable, as are most use restrictions (*i.e.*, types of development)." *Id*. at 1033-34. As it concerns use variances, we noted that, once it is established that use of the property in strict conformance with the governing ordinance is unachievable, the minimum-necessary variance requirement can be satisfied "by showing that of all the viable alternatives, the proposed use is the least departure from the terms of the ordinance, or the most similar to the uses in the surrounding neighborhood." *Id. Ridge Park Civic Association*, moreover, further entailed a determination as to the number of residential units necessary to build given the cost of development in an area that presented technical challenges. "In other words," we noted, "the inquiry required resolution of the factual issue of a reasonable profit and the minimum number of units necessary for it to be economically feasible to proceed." *Id.* at 1035.

As discussed above, the evidence produced before the ZBA thoroughly addressed the inability to develop the Property in strict conformance with the Zoning Ordinance, and Applicant provided evidence demonstrating both that its proposal reflected the least possible departure from the Zoning Ordinance and that the development would be in conformity with the surrounding neighborhood. As noted above, uncontradicted evidence established that the use of adjacent and surrounding

24

properties included commercial, industrial, single-family residential, and multi-family residential uses. (12/12/2018 Hr'g Tr. at 8-12, 32-34; R.R. at 17a-21a, 41a-43a.) The fact that Applicant already had significantly reduced the size and scope of the project lends support to the ZBA's determination that the variance sought was the minimum necessary. Casey's above-referenced testimony regarding economic viability provides significant further support, inasmuch as he specifically testified that additional reduction in the project and the number of units sought to be built would make the project economically unviable. (2/6/2019 Hr'g Tr.; R.R. at 668a (Casey describing the reduction in the scale of the project and testifying that "anything under that really . . . just does not financially work").) Thus, Applicant provided evidence addressed to the "factual issue of a reasonable profit and the minimum number of units necessary for it to be economically feasible to proceed." *Ridge Park Civic Association*, 240 A.3d at 1035. This evidence, which the ZBA was free to accept, supports the ZBA's determination that it provided the minimum variance necessary to afford Applicant relief from the hardship presented by the Property's zoning designation.

Accordingly, we find no error in the ZBA's determination as to the minimum-necessary variance requirement, nor in the trial court's affirmance thereof.

### C. Unpaid Property Taxes

Appellants' third issue, however, is problematic for Applicant. Applicant does not dispute that there were property taxes due on the Property at the time of the hearings; rather, the parties differ over the interpretation of the relevant provision of the Zoning Code. For clarity, it is worth setting forth this language in its entirety:

> (.9) No special exception or variance shall be granted unless the person who owns the property for which the application is made has provided documentation satisfactory to the [ZBA] verifying that all of the person's taxes due on the subject property pursuant to Title 19 of The Philadelphia

25

Code are current or are subject to a payment agreement; or produces evidence that denial of the application will result in an unconstitutional taking of the property for which it is sought. The following exceptions shall apply:

\*     \*     \*

(.d) If the applicant attaches a purchase and sale agreement providing that the sale of the subject property to the applicant is contingent upon approval of the application, together with an authorization for the application by the current owner of the subject property, *the [ZBA] may conditionally approve the application if it otherwise meets the criteria for approval, with a condition that the special exception or variance will be finally approved when L&I is provided with a copy of the [ZBA's] decision and documentation verifying that all of the taxes due on the subject property are paid in full*.

Philadelphia Zoning Code §14-303(15)(a)(.9)(.d) (emphasis added).

The parties do not dispute that the acquisition of the Property was contingent upon approval of the requested variance, or that Applicant attached the agreement as required. The dispute, rather, is over the use of the word "may" in the relevant exception. Appellants argue that, if property taxes are unpaid, the ZBA's approval must be conditioned upon payment of the taxes. Applicant argues that the word "may" means that the application of the exception is discretionary, and the ZBA is authorized to choose whether to provide a conditional or a final approval.

Applicant's interpretation of this language is unreasonable. It would be absurd for the Zoning Code to specifically articulate the circumstances under which the ZBA may approve a variance with respect to property with unpaid taxes, yet provide the ZBA with unbridled discretion to ignore the Zoning Code. The language at issue is an *exception* from a general rule that no variance "shall be granted" unless the taxes due on the property are current or subject to a payment agreement. That exception states that, if the requirements are met, the ZBA "may conditionally

26

approve" the application. The exception then goes on to address the circumstances under which the "variance will be finally approved," *i.e.*, when L&I receives documentation that the taxes have been paid. Despite the clarity of this language, Applicant curiously suggests that the use of "may" in this section means that the ZBA simply may skip the conditional-approval step and proceed directly to a final approval, if it so chooses. This is simply an untenable reading of the language of the Zoning Code.

Appellants' counsel made her objections based on the tax status of the Property amply clear at both hearings, and the parties and the ZBA thoroughly discussed the relevant language of the Zoning Code. (12/12/2018 Hr'g Tr. at 50-58; R.R. at 59a-67a; 2/6/2019 Hr'g Tr.; R.R. at 700a-02a.) Yet, the ZBA did not address this concern in its Findings of Fact or Conclusions of Law. Furthermore, even though Appellants raised the matter in their Pa.R.A.P. 1925(b) statement, which the trial court quoted in its Rule 1925(a) opinion, the trial court did not address the issue either.

Given that it is undisputed that there are outstanding property taxes due on the subject Property, that section 14-303(15)(a)(.9) of the Zoning Code plainly states that a variance shall not be granted in such a circumstance, and that Applicant's contention regarding the exemption to that provision is untenable, it is clear that Appellants have advanced a meritorious challenge to the ZBA's decision in this regard. Moreover, because Appellants clearly raised this issue at each step of the proceedings, we find that the ZBA and the trial court erred in failing to address Appellants' argument.

As such, although we have found no error in the ZBA's determinations with regard to Applicant's demonstration of unnecessary hardship and that it requested the minimum necessary variance to afford it relief, we must vacate the trial court's

27

order to the extent that Applicant failed to establish that it was entitled to a variance absent payment of the taxes due on the subject Property.

The order of the trial court is affirmed in part and vacated in part, and the matter is remanded to the trial court to remand to the ZBA to address the issue relating to unpaid taxes.


_____
PATRICIA A. McCULLOUGH, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re:  Appeal of Frank Garcia           :
                                         :   No. 134 C.D. 2020
                                         :
                                         :
                                         :
Appeal of:  Frank Garcia and             :
Kenneth Woods                            :

## ***ORDER***

AND NOW, this 10th day of May 2022, the December 11, 2019, order of the Court of Common Pleas of Philadelphia County (trial court) is AFFIRMED IN PART and VACATED IN PART, and the matter is REMANDED to the trial court to remand to the Philadelphia Zoning Board of Adjustment to address the issue relating to unpaid taxes in accord with this opinion.

Jurisdiction relinquished.


_____
PATRICIA A. McCULLOUGH, Judge